## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONSTANCE WILSON ANDRESEN,** | : | **CIV NO. 1:20-CV-989** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

### I.   Factual Background

In this case we are called upon to assist the parties in addressing the last remaining motions in this lawsuit whose underlying merits have largely been resolved. This is a *pro se* civil rights lawsuit first brought by Constance Wilson Andresen in June of 2020 against six individual and institutional defendants, including a notary public, Denise Watkins. (Doc. 1). This civil lawsuit appeared to arise out of prior criminal proceedings brought against Andresen in the Court of Common Pleas of Huntingdon County. As to these underlying criminal proceedings, state court records reveal that on October 4, 2019, Andresen entered a plea of *nolo*

*contendere* to barratry, a violation of 18 Pa. Cons. Stat. Ann. § 5109.[1] See Commonwealth v. Andresen, Crim. No. CP-31-CR-0000442 (CCP, Huntingdon County, Pa). As a result of her conviction, Andresen was required to pay costs of prosecution and was fined. Notwithstanding her *nolo contendere* plea to this charge, in her initial complaint, Andresen has sued a host of individual and institutional defendants alleging that these defendants engaged in "[e]xcessive force, false probable cause, false address [sic], abuse of process, assault, injury/surgery, verbal abuse of threats/bullying" in violation of the Fourth and Fourteenth Amendments.

Currently, only one defendant—State Police Corporal Jonathan Thomas—and one claim—excessive force—remain in this case. Thus, Watkins has been dismissed from this case. Nonetheless, two motions remain pending with respect to the plaintiff and Defendant Watkins. For her part, Watkins has filed a motion seeking an award of attorneys' fees as Rule 11 sanctions. This motion provides an estimate of those fees but does not include the type of specific lodestar information concerning billing rates and hours worked which would be necessary for an informed resolution of this motion. (Doc. 106).

---

[1] Pennsylvania defines the crime of barratry in the following terms: "A person is guilty of a misdemeanor of the third degree if he vexes others with unjust and vexatious suits." 18 Pa. Cons. Stat. Ann. § 5109.

Wilson Andresen, in turn, has filed a motion for a hearing on this sanctions request, but her motion and subsequent filings suggest that the plaintiff believes that this hearing would be a forum for the litigation of her previously dismissed claims, and would provide her the opportunity to attempt to obtain damages from Ms. Watkins. (Doc. 128). To the extent that the plaintiff seeks through this sanctions motion to re-litigate the merits of her dismissed claims against Defendant Watkins, this request is inappropriate and will be denied. However, as discussed below, we will prescribe a path forward for the litigation of this motion for sanctions.

## II.   __Discussion__

We begin our discussion with some familiar legal principles governing Rule 11 sanctions litigation. At the outset, to the extent that Defendant Watkins seeks attorneys' fees as sanctions in this case:

> "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir.1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered ...." Knight v. Drye, 2009 WL 2928899, 2009 U.S. Dist. LEXIS 82369 (M.D.Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.3d 143, 150 (3d Cir.1990)). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

In the more familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir.2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir.2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir.2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir.1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir.2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' ... that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive. Loughner, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." Ridley v. Costco Wholesale Corp., 217 Fed.Appx. 130 (3d Cir.2007) (quoting Washington, 89 F.3d at 1036); see also Black Grievance Committee v. Philadelphia Elec. Co., 802 F.2d 648, 652–53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set

out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " <u>Public Int. Research Group of N.J., Inc. v. Windall</u>, 51 F.3d 1179, 1188 (3d Cir.1995) (internal citation omitted); <u>see also Dellarciprete</u>, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." <u>Id</u>. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. <u>Id</u>.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." <u>Id</u>. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir.1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. <u>Id</u>.

In addition to the traditional lodestar analysis, we note that in the context of Rule 11 sanctions—unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party—the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. <u>Doering</u>, 857 F.2d at 194 (citation omitted).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 378–79 (M.D. Pa. 2010), <u>aff'd</u>, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010).

Moreover, all parties should be cognizant of the fact that the leading Third Circuit case regarding Rule 11 sanctions, <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191(3d Cir.1988), also cautions that such sanctions should be used sparingly, should be no greater than is necessary to deter misconduct, and

"should be guided by equitable considerations", including the parties' resources and ability to pay. Id. at 195.

### III.   Order

In order to focus the parties' attention on these matters which are relevant to a determination of this sanctions motion, IT IS ORDERED as follows:

1. To the extent that the plaintiff's motion for hearing seeks to litigate matters beyond the proper scope of the sanctions  motion, attempts to re-litigate claims that have been dismissed, or seeks to recover damages from Defendant Watkins, (Doc. 128), the motion is DENIED.

2. If Defendant Watkins wishes to pursue fees as a sanction she should file a supplemental submission in support of this fees request that includes declarations by counsel attesting to the items that are essential to any lodestar analysis, as well as providing an itemized listing of hours spent litigating this case on or before **January 7, 2022**.

3. The plaintiff may then file a supplemental response, focusing on the lodestar analysis and equitable factors identified in Doering, on or before **February 14, 2022**.

4. The movant may then file a reply brief on or before **February 28, 2022**.

5.  Upon receipt of these submissions, we will determine whether a hearing is

    appropriate or necessary.[2]

SO ORDERED this 9th day of December 2021.


                                        *S/Martin C. Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge

---

[2] In selecting these dates we have taken into account the intervening holidays as well as the plaintiff's report that she is under some form of medical care until mid-January 2022.