## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONSTANCE WILSON ANDRESEN,** | : | **CIV NO. 1:20-CV-989** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER[1]

### I.   Factual Background

In this case we are called upon to address a motion filed by a defendant who was previously dismissed from this lawsuit, Denise Watkins, seeking attorneys' fees from the plaintiff, Constance Wilson Andresen, as a sanction for her allegedly frivolous and vexatious litigation. (Doc. 106).

---

[1] This court, as a United States Magistrate Judge, is authorized to rule upon post-judgment attorney fee and sanctions disputes like those presented in this case. See, e.g., Merritt v. Int'l. Brotherhood of Boilermakers, 649 F.2d 1013 (5th Cir. 1981); Temple v. WISAP USA in Texas, 152 F.R.D. 591 (D.Neb. 1993). We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

This sanctions motion, in turn, comes before us on a striking and extraordinary set of facts. It is entirely undisputed that Wilson Andresen has a long history of indulging in frivolous and vexatious litigation. Indeed, some twenty years ago, a federal court in Connecticut which was addressing other litigation that apparently involved Wilson Andresen expressly stated that "the court is persuaded that the individual defendants, particularly Constance Andresen, engaged in bad faith during aspects of the litigation," but refrained from financially sanctioning the plaintiff. Pridgen v. Andresen, No. 3:94CV851(DFM), 2000 WL 863053, at *7 (D. Conn. Mar. 31, 2000). While the court permitted Wilson Andresen to avoid monetary sanctions in this lawsuit, it plainly condemned her conduct of this litigation, finding that:

> [T]he testimony of Constance Andresen was highly incredible . . . evasive, insincere, self-serving, lacking in candor and at times even absurd. Her demeanor while testifying, her behavior in the courtroom, the substance of her testimony and the numerous inconsistencies in her testimony prevent the Court from crediting any testimony or evidence which she offered to contradict the evidence offered by the plaintiffs.

Id., at *6.
!

It is against the backdrop of this prior meritless and meretricious litigation that Wilson Andresen now enjoys the rare distinction of having been criminally convicted of engaging in vexatious litigation. On October 4, 2019 Wilson Andresen entered a plea of *nolo contendere* to barratry, a violation of 18 Pa. Cons. Stat. Ann.

§ 5109 in the Court of Common Pleas of Huntingdon County. See Commonwealth v. Andresen, Crim. No. CP-31-CR-0000442 (CCP, Huntingdon County, Pa). As a result, Wilson Andresen stands convicted of the offense of barratry which is defined in Pennsylvania law in the following terms: "A person is guilty of a misdemeanor of the third degree if he vexes others with unjust and vexatious suits." 18 Pa. Cons. Stat. Ann. § 5109. Further, state court records reveal that, as a result of her conviction, Wilson Andresen was required to pay costs of prosecution and was fined.

Notwithstanding her state court conviction for indulging in frivolous litigation which "vexes others with unjust and vexatious suits," in the wake of her state court barratry conviction, Wilson Andresen launched upon a course of conduct which was in equal measures astonishing in its hubris and breathtakingly unwise. She filed the instant federal civil rights lawsuit which accused various participants in this state criminal prosecution of false arrest and malicious prosecution. She leveled these accusations even though it was undisputed that Wilson Andresen was convicted in this state criminal case. One of those accused by Wilson Andresen of violating her civil rights in the course of this criminal case which led to her conviction was a former notary public, Denise Watkins.

Sued in this fashion by Wilson Andresen, Watkins moved to dismiss this complaint on June 3, 2021. (Docs. 80, 91). Watkins also put Wilson Andresen on notice that she would seek sanctions against the plaintiff if she persisted in pursuing

this meritless claim. Specifically, on June 17, 2021, Watkins' counsel notified the plaintiff "that Ms. Watkins intends to file a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 unless you withdraw the First Amended Complaint (Doc. 75) as to the claim made against Ms. Watkins within 21 days of the date of this letter." (Doc. 106-1).

This admonition provided Wilson Andresen with an opportunity to reflect, change her course of action, and avoid any possibility of sanctions litigation. Wilson chose to ignore this warning and launched upon a feckless path, filing an opposition to Watkins' motion to dismiss on July 2, 2021. (Doc. 97). At the time that she elected to follow this course, there is no doubt that Wilson Andresen knew that pursuit of this claim could result in sanctions litigation since she attached the June 17, 2021 letter from Watkins' counsel as an exhibit to her response in opposition to this motion to dismiss. (Doc. 97-1).

On July 7, 2021, we filed a Report and Recommendation which recommended that Wilson Andresen's complaint against Watkins be dismissed. (Doc. 102). In that Report and Recommendation, we highlighted the legal and factual bankruptcy of Wilson Andresen's claims against Watkins, observing that:

> Following the dismissal of a number of defendants, Andresen was afforded leave to amend her complaint. Andresen has now filed an amended complaint. (Doc. 75). This amended complaint, which is now the operative pleading in this case, continues to list Denise Watkins as a defendant. Watkins is named only in Count III of the amended complaint. (Id., at 38). That count, however, simply alleges that

Andresen was improperly arrested by the Pennsylvania State Police. (Id., ¶¶ 177- 90). The only other averment made by Andresen that relates to Watkins is the following cryptic allegation:

> AT THE HANDS OF MAGISTRATE LISA COVERT . . . AND LACK OF PROTECTION IN THE COURTROOM / ERICA SHOAF IN FALSIFICATION OF RECORDS IN A PROBABLE CAUSE ARREST WARRANT PROVIDING FALSE [I]NFORMATION WITHIN THE HUNTINGDOWN AREA, AND DENISE WATKINS FOR DESTROYING NEEDED NOTARY BOOK BY NOT TURNING IT IN.

(Doc. 75, at 18).

It is upon this exceedingly thin reed that Andresen seeks to sue Watkins.

(Doc. 102, at 3).

Having identified this complaint as bereft of well-pleaded facts, we also concluded that Wilson Andresen's civil rights claims against Watkins foundered on two insurmountable legal obstacles: First, as a notary public, Watkins was not a state actor within the meaning of the federal civil rights statute, 41 U.S.C. §1983. Second, Wilson Andresen's complaint stemmed from the wholly erroneous premise that she could sue individuals for malicious prosecution even though she had entered a *nolo contendere* plea to the state charges and was adjudged guilty in this state criminal case. (Id.) It merits noting that, by the time that Wilson Andresen was litigating this motion to dismiss, she was already well aware that she could not premise a malicious prosecution claim upon a criminal case in which she had been convicted. Wilson Andresen knew that these claims were legally frivolous because an earlier iteration

of her complaint had previously been dismissed on these grounds. (Docs. 41-44). Thus, by repeating these meritless claims, Wilson Andresen was engaging in the type of conduct that Albert Einstein characterized as the highest form of folly—she was doing the same thing over and over again but was expecting different results.

This Report and Recommendation afforded the plaintiff a second opportunity to alter her conduct by withdrawing the meritless claims that she had lodged against Watkins, but once again she declined to do so. Instead, the plaintiff lodged objections to this Report and Recommendation, reasserting her legally and factually frivolous claims. (Doc. 111). These objections were rejected by the district court and Watkins' motion to dismiss the plaintiff's complaint was granted, (Doc. 123), thus setting the stage for this sanctions litigation.

Thus, Watkins has filed a motion seeking an award of attorneys' fees as Rule 11 sanctions. (Doc. 106). Wilson Andresen, in turn, responded to this motion by filing a motion for a hearing on this sanctions request, but her motion and subsequent filings indicated that Wilson Andresen sought a hearing simply in order to engage in further vexatious litigation. Specifically, Wilson Andresen's filing suggested that the plaintiff believed that this hearing would be a forum for the litigation of her grievances and previously dismissed claims and would provide her the opportunity to attempt to obtain damages from Ms. Watkins. (Doc. 128).

We then entered an order which explained to the plaintiff that, to the extent that she sought through this sanctions motion to re-litigate the merits of her dismissed claims against Defendant Watkins, this request was inappropriate. Instead, we prescribed a path forward for the litigation of this motion for sanctions, directing the parties to submit supplemental pleadings with respect to this sanctions motion. (Doc. 136). We have now received these supplemental pleadings. (Docs. 137 and 140).

For her part, Wilson Andresen's response in opposition to this sanctions motion rested upon a proposition which was remarkable in its lack of sincerity. According to the plaintiff, Watkins is not entitled to any sanctions in this case because she failed to properly and timely notify the plaintiff of her intent to seek sanctions. (Doc. 140). On this score, Wilson Andresen's argument ignores the facts, including her own prior filings, which amply show that on June 17, 2021 the plaintiff was put on notice in writing of Watkins' intent to seek sanctions if the Wilson Andresen declined to withdraw her frivolous complaint. Wilson Andresen also seemingly ignores her own decision to engage in litigation misconduct after she received this notice from Watkins' counsel by persisting in advancing these legally and factually meritless claims.

It is against this factual backdrop that we consider this sanctions motion. For the reasons set forth below, this motion for sanctions is GRANTED in part as

follows: The plaintiff will be ordered to pay attorneys' fees totaling $10,000 to the defendant as a sanction for this litigation misconduct.

## II.   <u>Discussion</u>

### A. <u>Rule 11 Sanctions—Guiding Principles</u>

The legal principles governing Rule 11 sanctions litigation are familiar ones. By its terms, Rule 11 imposes an obligation upon litigants to refrain from frivolous and vexatious litigation, and specifically provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Having imposed this duty of forthrightness, candor, and good faith upon litigants, Rule 11(c) then provides for sanctions against parties who indulge in baseless and frivolous litigation, stating that:

**(c) Sanctions.**

**(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(4) *Nature of a Sanction.*** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

In determining whether to impose Rule 11 sanctions in a given case, we are cautioned that:

> The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," <u>Eastway Construction Corp. v. City of New York</u>, 637 F.Supp. 558, 564 (E.D.N.Y.1986), <u>modified and remanded</u>, 821 F.2d 121 (2d Cir.), <u>cert. denied</u> —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases," <u>Gaiardo</u>, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." <u>Eastway Construction Corp.</u>, 637 F.Supp. at 564. This Court and others have interpreted its language to prescribe sanctions, including fees, only in the "exceptional circumstance", <u>Gaiardo</u>, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. <u>See, e.g., Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 157 (3d Cir.1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.' ") (quoting <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 831 (9th Cir.1986)); <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir.1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.' ") (quoting <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir.1985)), <u>cert. denied sub nom. County of Suffolk v. Graseck</u>, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

<u>Doering v. Union Cty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988).

"Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." <u>DiPaolo v. Moran</u>, 407 F.3d 140, 146 (3d Cir. 2005). Therefore, when considering a sanctions motion, it is clear that "the main purpose of Rule 11 is to deter, not to compensate." <u>Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania</u>, 103 F.3d 294, 301

(3d Cir. 1996). Further, '[t]he language of Rule 11 evidences the critical role of judicial discretion" in making sanctions determination. <u>DiPaolo</u>, 407 F.3d at 145. This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. <u>Id.</u>

The exercise of this discretion is guided, however, by certain basic principles. Foremost among these principles is the concept that "[a]lthough money sanctions are not encouraged under Rule 11, they are not forbidden." <u>Zuk</u>, 103 F.3d at 301. Therefore, when considering a motion for attorneys' fees as a Rule 11 sanction, the Third Circuit:

> [H]as instructed the district courts that "[f]ee-shifting is but one of several methods of achieving the various goals of Rule 11," that they should "consider a wide range of alternative possible sanctions for violation of the rule," and that the "district court's choice of deterrent is appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior." <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir.1988).

<u>Zuk</u>, 103 F.3d at 301.

The deterrent design of Rule 11 also factors into the manner in which an attorneys' fee sanction is calculated. In this regard:

> "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 195 (3d Cir.1988); <u>see also Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered ...." Knight v. Drye, 2009 WL 2928899, 2009 U.S. Dist. LEXIS 82369 (M.D.Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.3d 143, 150 (3d Cir.1990)). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

In the more familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir.2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir.2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir.2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir.1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir.2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' ... that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive. Loughner, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." Ridley v. Costco Wholesale Corp., 217 Fed.Appx. 130 (3d

Cir.2007) (quoting <u>Washington</u>, 89 F.3d at 1036); <u>see also Black</u> <u>Grievance Committee v. Philadelphia Elec. Co.</u>, 802 F.2d 648, 652–53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " <u>Public Int. Research Group of N.J., Inc. v.</u> <u>Windall</u>, 51 F.3d 1179, 1188 (3d Cir.1995) (internal citation omitted); <u>see also Dellarciprete</u>, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." <u>Id</u>. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. <u>Id</u>.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." <u>Id</u>. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir.1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. <u>Id.</u>

In addition to the traditional lodestar analysis, we note that in the context of Rule 11 sanctions—unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party—the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. <u>Doering</u>, 857 F.2d at 194 (citation omitted).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 378–79 (M.D. Pa. 2010), <u>aff'd</u>, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010). Moreover, in all instances we should be cognizant of the fact that the leading Third Circuit case regarding Rule 11 sanctions, <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191(3d Cir.1988), also cautions that such sanctions should be used sparingly, should be no greater than is necessary to deter misconduct, and "should be guided by equitable considerations", including the parties' resources and ability to pay. <u>Id.</u> at 195.

## B. <u>Watkins' Motion for Sanctions Will Be Granted in Part</u>

Applying these legal guideposts, we have little difficulty concluding that Wilson Andresen has engaged in sanctionable misconduct in this case. Indeed, this case presents the very paradigm of a frivolous, sanctionable lawsuit. Wilson Andresen—who had been criminally convicted of engaging in litigation that "vexes others with unjust and vexatious suits," 18 Pa. Cons. Stat. Ann. § 5109—elected to bring vexatious and meritless claims against the participants in this state criminal case, including Denise Watkins. The plaintiff chose and persisted in this course even after the court had, through its rulings, made it abundantly clear that her legal claims were utterly without merit. Moreover, she continued to vex Watkins in this manner even after she had been notified by Watkins' counsel that her actions were sanctionable and she was given the opportunity to withdraw her claims against Watkins.

By choosing this course, and ignoring the consequences of her actions, Wilson Andresen plainly violated Rule 11 and has now subjected herself to sanctions. Moreover, nothing in Wilson Andresen's responses to this sanctions motion in any way suggests that she should not be sanctioned. Quite the contrary, the plaintiff's various responses to this motion underscore why some sanctions are necessary in this case. Initially, Wilson Andresen responded to this motion by filing a motion for a hearing on this sanctions request, but her motion and subsequent filings indicated that Wilson Andresen sought a hearing simply to engage in further vexatious litigation, since Wilson Andresen indicated that she intended to use a hearing as a forum for the litigation of her previously dismissed claims and as an opportunity to attempt to obtain damages from Ms. Watkins. (Doc. 128).

In her subsequent response to this sanctions motion Wilson Andresen asserted that Watkins is not entitled to any sanctions in this case because she failed to properly and timely notify the plaintiff of her intent to seek sanctions. (Doc. 140). Thus, Wilson Andresen apparently attempts to avoid sanctions by seeking haven in the "safe harbor" provision of Rule 11 which states that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(3).

In our view, Wilson Andresen's "safe harbor" argument is risible and is further evidence of the frivolous way in which she has conducted these proceedings. Simply put, Andresen never did what this safe harbor provision requires. She never withdrew her frivolous claim. Yet she seeks the benefit of this safe harbor provided for by Rule 11. Therefore, the plaintiff's argument invites us to ignore the facts, including her own prior filings, which amply show that on June 17, 2021 the plaintiff was put on notice in writing of Watkins' intent to seek sanctions if the Wilson Andresen declined to withdraw her frivolous complaint. Wilson Andresen also seemingly ignores her own decision to engage in on-going litigation misconduct pursuing this factually and legally bankrupt claim against Watkins long after she received this notice from Watkins' counsel that her actions were sanctionable. In short, Wilson Andresen cannot avail herself of this safe harbor since she made a calculated decision to pursue this vexatious claim even after receiving written notice from Watkins' counsel demanding that she withdraw the complaint. Rule 11's safe harbor is only available to those who steer a prudent course in litigation when their actions are challenged; it may not be used by those like Wilson Andresen who continue to navigate a recklessly irresponsible path in the face of warnings that their actions violate Rule 11. In any event, by deferring action on this motion until now, we ensured that the motion was not presented to us for our consideration until after

the 21-day time frame for withdrawing frivolous claims had passed. Therefore, Wilson Andresen may not avail herself of this safe harbor.

We have also carefully considered what the appropriate sanction would be in this case which involves grave litigation misconduct by a party who was convicted of barratry. In this regard we recognize that "[a]lthough money sanctions are not encouraged under Rule 11, they are not forbidden." Zuk, 103 F.3d at 301. We further acknowledge that a "district court's choice of deterrent is appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior." Id. In this case, however, we conclude that monetary sanctions are minimum measure that may deter future misconduct.

We reach this conclusion based upon Wilson Andresen's conduct, and prior history of litigation misconduct, which has shown that oral or written admonitions, and other non-monetary sanctions have not deterred her misbehavior. Indeed, this case presents the extraordinary, and unprecedented, circumstance of a litigant who has not been deterred from litigation misconduct by her own conviction for barratry. This constellation of circumstances strongly suggests that a significant monetary sanction is both necessary and appropriate to deter the plaintiff from further misdeeds.

Having reached these conclusions, we turn to the first step of any Rule 11 sanctions assessment, a lodestar analysis of the movant's fees petition. In their

petition, Watkins' attorneys seek total fees of $14,831.50, consisting of 16.9 hours of work performed by Attorney Hyser-Staub, whose hourly rate is $320.00, and 40.1 hours of work performed by Attorney Wolgemuth, whose hourly billing rate is $200.00. While Wilson Andresen has not directly challenged the reasonableness of any of these fees calculations, we have independently reviewed these lodestar factors and find them to be entirely reasonable and appropriate.

Turning first to the hourly rates claimed by counsel, we find that these hourly rates of $200 and $325 are entirely "commensurate with reasonable prevailing hourly rates recently determined by this court in other fees litigation." Yeh v. United States Bureau of Prisons, No. 3:18-CV-943, 2020 WL 1505661, at *6 (M.D. Pa. Mar. 30, 2020) (citing Eckert v. Chauffeurs, Teamsters & Helpers Local Union 776 Profit Sharing Plan, No. 1:15-CV-1920, 2018 WL 4404657, at *7 (M.D. Pa. Sept. 17, 2018)); Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp., No. 3:10-CV-1559, 2016 WL 1076910, at *5 (M.D. Pa. Mar. 18, 2016) (Mehalchick, M.J.) (collecting cases); United States ex rel. Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, at *6 (M.D. Pa. Oct. 27, 2015) (Carlson, M.J.) (collecting cases), adopted by 2016 WL 4592175, at *6 (M.D. Pa. Feb. 4, 2016) (Mariani, J.); see also Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 145 (M.D. Pa. 2018) (collecting cases approving rates of between $250 and $325 per hour). Further, the number of hours claimed by counsel as dedicated to the

18

litigation of this matter, 57 hours, is entirely fitting given Wilson Andresen's penchant for filing prolix, redundant and meritless pleadings each of which nonetheless required the time and attention of counsel. Indeed, on this score, Wilson Andresen has only herself to blame for the number of hours committed by defense counsel to this litigation, since her persistence in pursuing meritless claims was the primary factor driving the number of hours counsel committed to this case.

Yet, while Watkins' fees petition is appropriate under a straightforward lodestar analysis, in the Rule 11 context we must also consider the deterrent purpose of the rule. In this regard:

> [I]n the context of Rule 11 sanctions—unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party—the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted).

Lease, 712 F. Supp. 2d at 379.

Taking these equitable considerations into account, and mindful that we are cautioned to exercise restraint in this field, we conclude that Wilson Andresen's litigation misconduct, while grave, may be deterred by a lesser sanction than the entire attorneys' fees incurred by the defendant. Therefore, in the exercise of our discretion we will impose a Rule 11 sanction of $10,000 in this case because "we find that $10,000 represents an appropriate fee to be imposed as a sanction in this case, based upon both the lodestar analysis, and in consideration of the equitable

factors[2] that the Third Circuit has identified as relevant to calculating attorney's fees imposed as a sanction against a [party] found in violation of Rule 11." <u>Lease</u>, 712 F. Supp. 2d at 386.

An appropriate order follows.

SO ORDERED this 16th day of March 2022.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

---

[2] With respect to these equitable considerations, we note that the party's ability to pay is one such factor. We had hoped to be able to take this factor into account and specifically brought this factor to Wilson Andresen's attention and invited her to provide us information regarding her ability to pay a sanctions award. To date she has declined to do so, shrouding her finances in secrecy. Given the plaintiff's refusal to cooperate in this regard, we have been prevented from taking this equitable consideration into account.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CONSTANCE WILSON ANDRESEN,** | : | **CIV NO. 1:20-CV-989** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 16th day of March 2022, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that Defendant Watkins' motion for sanctions, (Doc. 106) is GRANTED, in part, and the plaintiff is ORDERED to pay attorneys' fees totaling $10,000, to defense counsel as a sanction under Rule 11 for litigation misconduct in this case.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge